case. 13 38 55 13 38 57 Mark Landford versus Warden Ross Correctional Institution. Oral argument not to exceed 15 minutes per side. Miss Price for the respondent appellant Rossens were and he will be  record. The defender Ross Apple Ae Yeah May it please the court. I'm assistant attorney General Elmer Price and I'm representing a warden of the Ross Correctional Institution on behalf of the warden. I submit that this court must reverse the decision of the district court granting a conditional writ of habeas corpus requiring that the warden release Mr. Lankford unless the state provides him with a new trial on the charge of murder. The warden submits that the state need not give Mr. Lankford a new trial because his first trial did not violate his right to due process. Lankford argued and the lower court found that the jury instructions given by the trial court to the jury were both ambiguous and unconstitutional because the instructions failed to make it clear that a defendant in order to be convicted of complicity in the commission of murder must have acted purposely. That is he must have had an intent to kill. The state court of appeals for Franklin County however found that the definition of purposely was before the jury for this for its consideration on that charge. Wasn't it wasn't it for before the jury as to the person who was the shooter when you look at the instruction as it relates to the aider and the better and a better or here the person who is charged with complicity it doesn't appear to be the case. It doesn't appear that it is clearly identified or it doesn't clearly instruct the jury that you must separately find that that person had intent and if you argue differently show me where that where that intent a purposeful definition is attributed to the aider and a better. Your honor the language was this before you can find the defendant guilty of a crime as a complicitor or aider and a better you must find beyond a reasonable doubt that the defendant is guilty of a crime. That the defendant aided or abetted another in purposely committing the offenses of aggravated murder or murder. And that is the language that Langford says is ambiguous. However the state court found that that language could be read either way. It could refer both to the aider and a better and the principal shooter. In other words the language says the defendant aided or abetted another in purposely committing the offenses of aggravated murder or murder. It doesn't say that the defendant aided another and that other purposely committed the offense of aggravated murder. It can be read either way. And the state court of appeals had no difficulty in seeing that it could be applied to both the principal shooter and the aider and a better. And in this case I would like to remind the court that Mr. Langford was charged both with murder as a principal shooter, aggravated murder and he was also charged with complicity. All those charges were part of the charge. And his focus is on the complicity charge. They acquitted him though of the aggravated charge being the principal, correct? Well they could have convicted him as a principal on either charge. They acquitted him of aggravated murder because they did not as a group find there was prior calculation and design. Even though a question from the jury indicated there were some individuals on the jury who thought that he should have been convicted of aggravated murder. That there was enough evidence to show prior calculation and design. So there is some debate about what the jury's verdict means. Was there also a firearm charge? There was a firearm specification on both charges. Specification, okay. Yes, aggravated murder with a specification. That would have made it aggravated, okay. Let me ask you this about the discussion at court. Obviously I think you were not the trial attorney. I guess Mr. Gatterdam was on his side so I'll ask him. But there was discussion about putting in the words purposely and knowingly.  That was the correct recitation of the argument. Both Mr. Gatterdam and Mr. Lowe said you have to insert the culpable mental state and then go into the aided and abetting language. And Mr. Lowe says yes, we should put in purposely and knowingly. And I take it that's what actually happened because the words purposely and knowingly are there. Is that correct? It is in the definition of complicity. The court gave a six paragraph definition of complicity. And the first paragraph was the definition of complicity which included the word purposely committing the offense of aggravated murder or murder. I have that language. That's what we know the way it came out. But apparently those words were in fact put in by agreement. And is the whole argument whether they were put in at the right point in the sentence? That is, I'm going to ask Mr. Gatterdam, if the word purposely appeared three or four words earlier, would there be no question that it's constitutional? First I would like to say that Mr. Gatterdam did not object to these instructions after they had been corrected after this discussion. The language he argues now is ambiguous. And it's because of the nuance of the word in purposely committing a murder. If he had said, he had suggested some other language, maybe it would have been crystal clear in his mind. But at this point, after the fact, he seems to have looked at this language long enough to say the jury, confused individuals that they might be, could have misunderstood this. However, these instructions go on to say, just a couple of paragraphs later, a common purpose among two or more people to commit a crime need not be shown by direct evidence. The word common purpose clarifies if there is any question that in fact both must have the same purpose. This is within the six paragraph definition of complicity. And it's the last six paragraphs of the instruction. So that even though the first paragraph defines complicity as a purpose for killing, the third paragraph goes on to say the complicitor and the aider and the better, one assumes, must have a common purpose. The common purpose among two or more people to commit a crime need not be shown by direct evidence. So that if there was any ambiguity in that first paragraph, it certainly would have been cleared up by reading. And what are the circumstances surrounding the act from which we can infer a common purpose? Well, there was a lot of actions that could have been used to infer. The key witness was Nicole Smith. She testified that she was among the group that did the killing. She did not have a gun and did not participate, but she was with them prior to the time they went over to Fairwood and shot Mr. Jones, and she was with them afterwards, all over into the night. You say they shot Mr. Jones. My understanding, and I'll again ask your adversary, that there were three people who were all shooting, but we don't know for sure which one actually fired the shots that killed him. Yes, only one person knows who had the .357 Luger, and Mr. Langford later admitted that he was the one who had that gun and fired the fatal shot. He said that to Isaac Jackson when he was in prison on another charge in West Virginia. But then that was disputed at trial as to whether he actually said that and as to whether it was the truth. Well, there's always a dispute about whether a witness is telling the truth or not. I think the jury, the arbiter of credibility, was the one that made this call. That they believed some of the witnesses or all of the witnesses, and in conjunction, concluded that Mr. Langford was guilty of murder. They convicted him on two counts of murder. The evidence was, according to Nicole Smith, that Mr. Langford had been beaten up by Marlon Jones and the Fairwood and Livingston boys. They didn't use the word gangs in the test transcript, but they were drug sellers and the Detroit boys were also drug sellers. There was a territorial dispute, and Mr. Langford, a defendant, was beaten up badly. His face was bruised and cut. He said to Nicole, I'm going to get them. He said it more than one time over a period of weeks. And on the evening question, they all gathered at Fairwood and he said, we're going to get them, as in tonight. She said they loaded their guns, they came with guns, they loaded their guns, and they walked to the house next to 773 Fairwood. And 773 Fairwood is where the Livingston and Fairwood boys hung out. So they went there, they walked through the alleyway. Two of them propped up a rifle. The other two then used handguns and the three of them began shooting. They shot at five or six individuals and Marlon Jones was killed. Mr. Langford was the one that had a revenge motive toward Mr. Jones. Nicole Smith could not say definitively which of the three young men had the two smaller handguns. She did say that she thought Mr. Langford had the .357 Luger at one time, but then she said she wasn't sure. And she wasn't sure whether Dante, the other individual that had the handgun, had the .357 Luger. However, the three of them were shooting and Mr. Jones ended up dead. Now, the fact that Mr. Langford later confessed to being the shooter had to have been based on nothing more than knowing which gun he had. There was no other way for the detectives or anyone reviewing the scene to know which gun he had. So his admission is the only admission on record identifying anyone as the actual killer. Now, he also admitted to another inmate, Jason Arno, that he was one of the three that was doing the shooting. Nicole Smith said he was one of the three, but in all of his statements to the police, he denied that he had a gun. He denied that he was the shooter. He at first denied that he was even in town. I understand that, but I want to go back, too, because what we're looking at, too, is whether or not the instruction was adequate on the mens rea element. And going back to those jury instructions, I know you've read from them before, but looking back at the jury instruction, I want you to again focus on what specific part of the aiding and abetting instruction adequately explains the purpose to kill the men. What part of the men's rea element is applied to the... It says the common purpose among two or more people to commit a crime. The crime being discussed is complicity to commit murder, and complicity was defined as aiding or abetting another, and that means taking some action to cause a murder. And so the common purpose would have been the purpose that's defined in the murder charge, as well as in the... That's the mens rea element, the specific intent element that is sufficient to communicate this or connote this to the jury. It is in all the charges for murder. Complicity to murder is another form of theory of murder, but all the charges refer to an intent to kill, and they were put in there only once, in the first instance, under aggravated murder. They weren't repeated under murder, they weren't repeated under complicity. However, let me point out to the court that we are not actually here to determine whether or not the jury instructions were clear, but only whether the state court of appeals review of those instructions was incorrect or unreasonable. The district court had to defer... No, not at all, because the state court said there's nothing wrong with these jury instructions, they are not ambiguous. I read them, and it says to me, a person who aids or abet another in purposely committing a crime... That's the AEDPA standard difference, is that under AEDPA, a lot of times we can say the state court was wrong, but it wasn't unreasonable in its decision. That is the standard. It may seem like an odd distinction, but we do that all the time in AEDPA, right? Yes, and it's a distinction that does make a difference, especially in this case, because the state court looked at these instructions and did not find them to be ambiguous. It has to be unreasonable under established Supreme Court precedent. Right, not only does it have to be an ambiguous language, but it has to be an unreasonable interpretation of the language. The interpretation of the language is that, according to the state court, it does refer to both, that there's no ambiguity. But if there was any ambiguity, two things cleared it up. One was the following paragraph referring to a common purpose, and if it were the case that it only referred to the shooter, then the common purpose would have made no sense. So a juror reviewing these instructions would have had to ask himself, what does this paragraph mean in light of that paragraph? And therefore would have had to say, well, a common purpose between two or more people, that must require them to have the same purpose. And so the instructions on their face were not ambiguous. They had no intentional intent for complicity, and so his remarks, according to the Supreme Court precedent, can also clarify jury instructions that are alleged to be ambiguous. But I mean, the judge always tells the jury what the prosecutor says is not binding on you, it's not the law, the court is going to give you the law. And in this case, I understand the prosecutors argued prior to the court giving jury instructions. So how would the prosecutors argument before the instructions clarify the instructions? Well, because he told the jury what the instructions would have, and he said to look at the instruction on criminal intent when he was talking about complicity. He advised them on the law. He did not provide evidence. That's what the jury, the trial court will advise the jury not to take as evidence. The prosecutor can't add evidence to the case. His statements are not evidence, but his arguments on the law are to be considered in conjunction with the jury instructions. He merely said, look at the definition of criminal intent when you get the jury instructions on complicity. I wanted to reserve five minutes for rebuttal on the charge. Did she only use ten? If you used your whole time, then you didn't...  Well, that's your time. Okay, counsel, maybe we'll give you a minute or so. May it please the court, Court Goddard and on behalf of Mark Langford. There is case law on this very issue from the U.S. Supreme Court. In Ray Winship, due process requires proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. But that's pretty general. The question here to me is, how would this instruction have misled the jury, and how did the instruction get to be the way it was? Could you address that? I think what I was getting to or asking that question is, it has to, the purposely has to precede aiding or abetting. The way the instruction reads now, I would submit, is talking about the principal offender purposely committing the offenses. Okay, so do you agree that if the word purposely had occurred six words earlier in the sentence, so it read the defendant purposely aided or abetted another, then it would be perfectly fine? I think it would have to be under the revised code 292303, no person acting with the culpability required for the commission of an offense, purposely, purpose to kill, and words to that effect. Which is similar to what the court said, I'm not prepared to say what the court said would be the exact wording. But then the discussion that's in the trial transcript at ID 2193, where you and Mr. Lowe seem to be discussing exactly this, and you and Mr. Lowe are discussing the same thing. And he says, well we agree then, we put in purposely for aggravated murder and knowingly for felonious assault, right? And you say yes, now I did not find in the record an earlier paper draft, but am I right that what really happened was you had some draft, and then whoever the ultimate drafter was put in, as you agreed, the word purposely, the word knowingly, and now we're arguing about whether you put it in the wrong place. When I say you, I mean collectively you. It's either that or your honor, quite frankly, when I saw this from appellate counsel, I was shocked because my intentions in that phrase was to have purposely precede aiding or abetting. I understand, but you were there, and at page 2223, you're focusing on exactly that, and you call his attention to a typo about committing versus committed, which is in the very next sentence. So obviously everybody is looking at these words, and nobody notices that, oh, this is going to be a horrible misinterpretation because it's six words different in the sentence. And I agree that may have been what happened, but it is a horrible mistake, your honor, because Did the prosecutor say anything about, oh, you can convict this guy if he drove the man there, and that's all you need? No, the warden submitted about six pages of closing argument. The prosecutor's position is that he was the shooter. They had the two snitches saying he's the shooter, so while they touched on aiding and abetting, it was only very briefly, and they never said he has to have the purpose to kill as an aider and abetter. Never said that in closing argument. If he is shooting, I mean, there's lots of evidence that he was shooting. He says he didn't, but there's a lot of evidence that he was shooting, then how can you say it is a reasonable likelihood that they thought, oh, he didn't have a common purpose? The jury verdict tells us everything. The gun specifications he was acquitted on, that means they rejected Isaac Jackson, they rejected Jason Arnold. All 12 means that at least one person thought there was a reasonable doubt. No, they had to all 12 acquit on the gun specs. That means he didn't have a weapon, he didn't fire a weapon, so that's why the aiding and abetting is so important. You know the law on compromise verdicts, that it doesn't affirmatively mean that. It means the jury decided to not convict on that. But a reasonable interpretation of the evidence is they believed Mr. Langford's statements to the police that he either made a call about the guns, he was near the scene, but not that he ever had a gun and went with them and shot. That's the only way the jury, because the gun spec says you had a firearm on or about your person and brandished it and or shot it. The jury acquitted him of that, so they had to believe he didn't do that. That all he did was he was there with the individuals and did one of the two or three things that he said to the police to Detective Reese. That's why it's so critical that the aiding and abetting instruction in this case, not maybe in any other case. And that's why we agree habeas is different, but that's why when the magistrate looked at this and the district court looked at this, they said this is so important under these facts because of the jury verdict. And I would disagree with the prosecutor. There's no physical evidence that he fired the shot that killed the individual. In fact, his statements were that he didn't have the .357, that Curtis Stokes had it. Well, when you say that, that implies I didn't have the .357, I had the .22? What they're saying is that before they left the scene, the individuals had some discussions. And the question is whether or not my client indicated he said all they had was a .357, so I made a phone call. That was one of his statements. The next statement is I didn't know what they were going to do. I drove in the car with them. Another statement is I watched them go over the fence, and I heard the gunshots. They ran back, and I got into the car with them and left. I mean, those were the aiding and abetting, and that's the only way you can square this gun specification. What was the .22? I mean, what's the evidence that somebody had it? Nicole Smith said that my client said he had the .22. My client denied having a gun or being present at the scene at all. So that's why this case was, was he an aider and abetter, or was he not? I submit that the jury verdicts on the gun specs and the acquittal on aggravated murder mean they didn't believe he had a purpose to kill. But did he have an aiding and abetting purpose? I say the language has to be in front of there. Otherwise, all you're doing is repeating the aggravated murder and murder instructions, which say you as a principal offender have to have that. You're really resting it a lot on the actual acquittal. If they had only hung on the gun specs, would that make any difference in your view? It might, because I think this really tells you. We don't normally have that kind of indication of what the jury was thinking, but here it makes perfect sense when you look at the record. They believed his statement to Detective Reese as to the things he did. I saw them leave, didn't see them shoot, heard the gunshots. It had to be something like that, because otherwise, if they believed the two snitches, wouldn't they have found him guilty of the gun spec, because the two snitches said, hey, he told me he shot. There's just no other way to look at the evidence in a fair manner, I would submit. The closing argument does nothing, because again, it isn't evidence, and it precedes the defective instruction. It's not evidence, but the question is, did it present the theory that, oh, you can still convict him if he only drove the people there, because that's really your unfairness argument. Why is it unfair to him? It's because they shouldn't have convicted him of murder if he only drove the people there with no purpose. Despite the evidence of the prior beating and so on. The prosecutor didn't argue it that way. He's the principal offender, or you can find him guilty of aiding and abetting, but never said anything about purpose, that he had to have the purpose as an aider and abetter. That's nowhere in the closing argument, either the initial or the rebuttal closing. It's really the placement of the word purposely, and analogously the word knowingly, and how they got there. That's really the argument. I agree. It is, Your Honor. Counsel, in going back to the instructions, the prosecutor referred to the common purpose instruction that provided or shed some light on this for the jury. She read that a common purpose among two or more people to commit a crime need not be shown, well, that's not what she read, but that is part of the instruction, should not be shown by direct evidence, but may be inferred from circumstances surrounding the act. And it goes on to say criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. In addition, mere presence can be enough if it is intended to and does aid the primary offender. With that instruction, without some statement about the intent required of the complicitor, what does that do for the instruction? I don't think it does anything. I think it's again talking about the principal offender and the common purpose between the co-defendants in this case, acting together as principal offenders. That's what that instruction is talking about. If it preceded the aiding and abetting language and said, as aiders and abetters, they could have had this common purpose, but you still must find, according to the Ohio law, you still must find that Mark Langford had the purpose to kill, even as an aider and abetter. That language, Your Honor, does not say Mark Langford, as an aider and abetter, had to have the purpose to kill. It talks about maybe discussions among co-conspirators as all joint participants in the event. There's no evidence that this jury found that Mark Langford was a principal offender. Your Honors, unless the Court has other questions, with my remaining time, I'd like to address very briefly the pre-indictment delay issue. There was a 13-year delay in this matter between the indictment, the case was dismissed, and then re-indicted. Under Levasco, we have to show prejudice, and we have to show that in light of the government's reason for the delay. We set forth some of the issues.  The detective testifies, and he indicates, I'm in the cold case squad. We didn't do anything for 10 years on this case. I pick it up in 2006. I do some searches. Hey, I find Nicole Smith. The same Nicole Smith that they dismissed the case for. We presented at least... She was in jail multiple times, had multiple opportunities for them to pick her up. We lost several important witnesses during that period of time. Much has been made in this record about, well, could they really come in and testify? I submit to you that ignores the right to present a defense. We had one witness who would have indicated that Mark Langford was several blocks away when the shooting occurred. He clearly could have testified to that if they had gone forward with trial in 1995. We had another witness who talked to people and knew that Mark Langford wasn't the shooter. Now, you say, well, how does that get in? That's hearsay. You're right. That's hearsay. So what happens is myself or my investigator goes and talks to that person and says, hey, where'd you hear that? Who'd you hear it from? What if he says Nicole Smith told me? The same Nicole Smith who comes in and testifies, hey, this is what Mark said. Now I can cross-examine her. Didn't you tell Big Mike that Mark Langford had nothing to do with this? Or better yet, what if it was somebody else who said, hey, Mark Langford wasn't there and that person was alive? They could have come in and testified. So again, this 13-year delay was so prejudicial to Mr. Langford that by the time they went and indicted him, the state's case was very strong, but the defense case was weak because we had no witnesses anymore. Is there any argument that they did this delay purposely or for any ulterior purpose? I'm laughing at the word purpose again coming into our argument. Your Honor, in the hearing we had, they indicated they were not investigating. The case all talks about is it an investigation or a tactical reason? And I would submit, I'll try to be honest about this, there's no evidence they were investigating the case until 2006. But I don't know if I can show you where in the record it says they purposely delayed this. But for a tactical reason, that they say it went into the cold case squad files, I take it it wasn't in the ha-ha, how can we get Langford file? I think that's accurate. I think that's what the record shows. The lead detective was either, he was definitely retired, he may have been deceased, the prosecutor was no longer on the case. So how would one ever know why they let it go for 11 years? But the record is it certainly was not for investigation purposes. They simply let this case ride and I think that there should be consequences when 13 years later, you give a man no chance whatsoever to represent himself. The people that could exonerate him are not there. Then you tell the jury who has acquitted you of having a firearm, sorry, you know what? You don't have to have the purpose to kill as an aider and abetter. I think when you look at, you want to talk totality of the circumstances as you have to do with jury instructions and with pre-indictment delay, I think I'm fine with that. I think that's exactly what we should do. And I think in looking at the evidence here, Mark Langford... When you said, if I heard you correctly, and then you told them, hey, he doesn't have to have the purpose to kill, that's really not what the instruction says. It's just it's in a place where one could make that argument. As an aider and abetter is what I meant to say. That he didn't have to have the same purpose as the principals, and we know the law is clear he does. It is. It's all about where it was positioned, and it's all about the gun specs in this case, telling us what the jury thought. There's no other questions. Thank you, Your Honors. All right. Thank you. Look, we'll give you two minutes for whatever rebuttal you want to make. You should reserve time if you need it. Thank you, Your Honor. I appreciate it. I will be brief. I would like to make two comments about Ground 2, the one which the State appealed. First of all, Judge Donnell quoted the exact language in the jury instructions, which would have left no doubt in the minds of the jury that the complicitor had to have a common purpose and a criminal intent, and he had to engage in some act and carry out that purpose. And so the jury instructions were not ambiguous, and they certainly were not ambiguous under the totality of the circumstances, which includes all of the language in that jury instruction. And second, I would point out, as to whether or not Mr. Lankford was convicted of complicity or not, the district court did not find that he was convicted of complicity. The district court was not persuaded that the not guilty verdict on the firearm specification meant that the jury found him guilty of complicity. The district court pointed out that in United States v. Powell, a jury verdict should not be looked at to determine what went on in the minds of the jury during deliberations, that the jury's verdict could be the result of compromise, could be the result of leniency, and if there is dispute among the jurors as to whether he's guilty or not, they may have reached some sort of compromise on the specification, and just agreed not to find him guilty on that. So I would say that there is no unequivocal evidence that he was convicted of complicity, and so any ambiguity in the jury instructions would not really have any bearing on whether his conviction was fair. As to the two other grounds, the pre-indictment delay, first of all, the state did continue to investigate. They actually talked to Nicole Smith when she was in jail on one of those occasions. The first detective who investigated was Detective Addie Coleman, and the record shows that one of her conversations with Nicole Smith was while she was incarcerated on some minor charges. So they had conversations not only with Nicole Smith from 1995 to 2006, but they also had conversations with Mr. Lankford until he went to federal prison. This case will be submitted.